ROBERT COLEMAN v. THE STATE.

No. 3119.    Decided December 6, 1905.

**1.—Murder—Charge of Court—Aggravated Assault—Deadly Weapon.**

On a trial for murder, there was no evidence as to the size of the stick or its weight, or any description of the whip, other than it was a blacksnake whip, or any evidence that either was a deadly weapon which was used upon deceased, and there was no description in the court's charge as to what constituted a deadly weapon: it was error not to have submitted the requested charge on aggravated assault, especially under articles 717 and 719 of the Penal Code. It is not the law because death results that therefore the conclusion is that the weapon used was a deadly weapon.

**2.—Same—Charge of Court—Self-defense.**

On a trial for murder, where the evidence warranted the conclusion that the deceased chased the defendant and overtook him commanding him to halt and took charge of his team, taking the lines away from him, and that defendant struck deceased over the head with a whip, or used a stick to free himself from the condition of things, the court should have charged on self-defense.

**3.—Same—Argument of Counsel.**

On a trial for murder, it was error for the State's counsel to discuss the facts of another case not connected with the one on trial, and such error is not cured by a verbal charge of the court instructing the jury to disregard such remarks. See criticism of such practice in opinion.

Appeal from the District Court of Red River. Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Chambers & Trice,* for appellant.—To constitute a deadly weapon there must be an intent to kill at the time the blow was struck; the instrument used must be per se a deadly weapon; and if not, the manner and means by which it was used must be taken into consideration. Fitch v. State, 37 Texas Crim. Rep., 500; Dansforth v. State, 69 S. W. Rep., 159; Johnson v. State, 60 S. W. Rep. 48; Boyd v. State, 28 Texas Crim. App., 137; Taylor v. State, 51 S. W. Rep., 1106; Dones v. State, 8 Texas Crim. App., 112; Whitaker v. State, 12 Texas Crim. App., 436.

The court erred in failing to charge the jury on aggravated assault and battery, as the evidence in said case fully raised that issue, and court's attention was called to same by special charges requested by defendant. Fitch v. State, 37 Texas Crim. Rep., 500; Taylor v. State, 51 S. W. Rep. 1106; Johnson v. State, 60 S. W. Rep., 48.

The trial court erred in permitting the district attorney to refer to a separate and distinct case from the one on trial, and state in his argument what a jury did to that party. Hamby v. State, 36 Texas, 523; 21 A. & E. of Law (2nd), 136.

*Howard Martin,* Assistant Attorney-General, for the State.—Henry v. State, 38 Texas Crim. Rep., 306.

DAVIDSON, Presiding Judge.—The conviction was for murder in the second degree, ten years in the penitentiary fixed as the penalty.

The circumstances of this killing, in substance, are about as follows: Appellant and Jim Gray, two negroes, had been out in the country two miles from the little town of Detroit, Red River County, to secure a load of wood to fill out a contract they had with some parties in the town of Detroit. Returning they met deceased, Jim Looney, and his father, F. M. Looney, about dark, driving rapidly in a buggy. Both were under the influence of intoxicants, the father being nearly drunk. Deceased and his father were driving in a small narrow buggy,

with a spirited horse hitched to it. Upon meeting the wagon, deceased and his father turned to their right and undertook to pass the wagon. They passed the front wheel with safety. Opposite the hind wheel was a pole driven in the ground. It seems that the left front wheel of the buggy struck the hind wheel of the wagon, and the other wheel struck the post. The left front wheel of the buggy was torn to pieces, and the right "badly dished." This caused the horse to rear and plunge, and deceased either fell out or was thrown out. The wagon passed on. The testimony from this point is confusing, conflicting and badly contradictory. Looney (the father) testified that he was engaged for some little time with the horse, which was rearing and trying to run away, and after circling him around, he finally got him stopped. At this juncture the wagon had passed on some distance, and it is rendered doubtful if he saw any more of the wagon or the negroes who were driving it. The State's theory is that deceased followed the wagon and overtook it. The trouble ensued between him and the two negroes, resulting in the death of deceased. The wounds on the body show that his skull was fractured on the top, and there was a sharp incisive lick of small dimension over one of the eyes. There was some bruises on his body. The dying declaration of the deceased shows, in substance, that he followed the negroes, and after reaching them, inquired why they had run against his buggy. Words led to others, and finally, under his statement, one of the negroes struck him with a stick or a black-snake whip, and stamped him. The father of deceased testified that he saw the negroes strike his son with a stick, and also kick him. Defendant took the stand, and testified, in substance, in regard to the meeting, as did the father of deceased; that he was very much excited, and the testimony shows practically, without contradiction, that the collision of the buggy and wagon occurred without design on the part of any of the parties. Deceased overtook appellant and his companion, and in rather profane language ordered them to stop. They were trying to get out of the way of the whitemen and did not stop. He ordered them again to stop, and he then caught the lines of the horses the negroes were driving, and by some means or other fell and the wagon ran over his head. He denied striking him with a stick, or anything else. This was his testimony on the trial. On the same night, directly after the occurrence, he went to the constable (who testified on the trial) and made practically the same statement to him. He went to the officer for the purpose of surrendering himself; at least to inform the officer of what had occurred, and leave himself in the hands of the officer to do what the officer thought was necessary to be done under the circumstances. There is quite a mass of testimony, but this is the substance of it.

The court charged on murder in the first and second degrees and manslaughter. The charge on manslaughter is general, giving the statutory definitions, and then informed the jury that, any circumstance or combination of circumstances that they might gather from the facts which

would render the mind incapable of cool reflection, would justify them in finding appellant guilty of manslaughter. It is insisted the court should have charged on aggravated assault. Charges were asked submitting this issue, but declined by the court. We think this was error. There is no evidence in the record as to the size of the stick, or its weight, nor is there any description of the whip further than that it was a black-snake whip. There is nothing outside the fact that it was a stick, or the butt-end of a black-snake whip, which shows or tends to show whether or not it was a deadly weapon. This was a sudden unexpected meeting between strangers: the whitemen were not known to the negroes, and the negroes were not known to the whitemen. It was about dark. The whitemen had come in collision with the negroes' wagon, and their buggy became smashed, and deceased angered. The conclusion is almost certain from this testimony that deceased followed the negroes, and brought about the difficulty. Without going into a further review of this testimony in regard to all the circumstances and conflicting theories, that might or might not be suggested by the evidence, we believe that the issue of aggravated assault was in the case. Outside of the fact that the deceased had a fracture of the skull, there is no evidence showing that the instrument used was a deadly weapon. It is not the law that because death results, therefore the conclusion is that the weapon used was a deadly weapon. Death can very easily be brought about by the use of a weapon that is not deadly, or without the intent on the part of the party inflicting the wound to bring about death.

It is also urged in this connection that the court failed to describe a deadly weapon in his charge. "The butt-end of a black-snake whip," or the mere mention of the fact that the blow was inflicted by an instrument described as a "stick" does not necessarily convey the idea that the instrument was a deadly one. This suggests a charge under articles 717 and 719 of the Penal Code, and it was error on the part of the court to refuse to submit the issue of aggravated assault.

We are further of the opinion that the court should have charged the law of self-defense. If the jury should find, as some of the testimony would warrant, that deceased chased the negroes, and overtook them, commanded them to halt, took charge of their team, took the lines away from them, and appellant struck deceased over the head with his whip, or used a stick to free himself from the condition of things made by these movements of deceased, he would be entitled to self-defense, unless he used greater force than was necessary. But under this view of the case we believe he was entitled to a clear charge on self-defense. The circumstances as claimed by appellant show that about dark, two whitemen, drunk or nearly so, driving rapidly, ran against appellant's wagon, smashed their buggy, then chased him, after it was over, took his team away from him, took charge of his wagon, used profane and boisterous language—this would justify a resistance on the part of appellant, and if he only struck with the butt-end of his whip, as deceased said in his dying statement, it would not be a

matter of law that this was excessive force. While the negro and white-man stand upon equal footing in the eyes of the law, still it is not unknown as a current matter of history, that the negro, under such circumstances as here detailed, would more than likely anticipate serious trouble, and that his life or safety from personal violence might depend upon rapid resistance. It was stated as a fact that the deceased was not armed, but this was not known to appellant, so far as the record is con-cerned; and all the circumstances taken together, required the court to submit the issue of self-defense.

There is another matter we desire to mention. The district attor-ney alluded to and discussed the facts of another case. The court says this was drawn out by some remarks of appellant's counsel. The bill of exceptions shows that the remarks of the district attorney were with reference to the Spencer case, and the language was about, as follows: That the case referred to was a murder case, somewhat similar to this case, and that case showed the death penalty had been inflicted, and such allusion was calculated to influence the jury and prejudice their minds against defendant. The court signed the bill by stating, "that the dis-trict attorney in his closing argument, in answer to some authorities read by counsel for defendant, showed what it took to make murder in the first degree. As soon as objections were made I. told the district attorney it was not proper or right to discuss the fact before the jury in a case not on trial." In the following bill it is shown: "Defendant's counsel claimed the fact that the defendant told the officers about the occurrence and surrendered, was proof of his innocence. The district attorney then, in reply said, that he knew of a case, of a negro named Spencer, and that counsel for defendant, and some of the jury knew of said case, where defendant came across the river to Red River County, surrendered to the officers, and was subsequently convicted and sent to the penitentiary for a term of ninety-nine years." Appellant objected to this for various reasons, and the court signs the bill with the explanation, that the court instructed the jury not to consider the remarks of the district attorney. These remarks were highly improper, and the objection to them should have been sustained at once. It is true that the court withdrew the remarks, or rather instructed the jury to disregard them. Still the remarks were made, and evidently found lodgment in the minds of the jury. If the facts stated by the district attorney in his argument had been introduced and offered be-fore the jury, they would have been clearly inadmissible, and the ad-mission of them before the jury would have required a reversal of the judgment. Why matters of this sort should continually occur in the trial of cases we do not understand. Under the theories of our criminal jurisprudence, every case should be tried upon the basic principle of our law, which is the presumption of innocence and reasonable doubt; and all matters that infringe those rules should be carefully excluded from the jury, whether in evidence or argument. It hardly answers this sort of erroneous proceedings, that subsequently the court with-

draws the matter from the consideration of the jury. It may or may not: it is owing to the seriousness of the statements. But these matters have become so frequent, and we find them in so many records that we feel called upon to discountenance them. Trial courts should promptly suppress such remarks and argument and attorneys refrain from using them, to the end that only fair and legitimate testimony and argument may be considered by the jury in the disposition of cases involving life and liberty.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*