### WILLIE BENSON v. THE STATE.

#### No. 4033.    Decided April 28, 1909.

**1.—Murder—Allusion to Former Conviction—Argument of Counsel.**

Where upon trial for murder the court permitted the district attorney on cross-examination of a witness to refer to a former conviction of the defendant wherein the death penalty had been assessed against him, and to lay stress on this matter in his argument before the jury, there was reversible error; and this although defendant had theretofore been acquitted of murder in the first degree; and defendant's counsel in his examination in chief casually referred to the fact that defendant had appealed his case. Following Hatch v. State, 8 Texas Crim. App., 416, and other cases.

**2.—Same—Charge of Court—Appearance of Danger.**

Where upon trial for murder the evidence raised the issue of the reasonable apprehension of danger as it appeared to the defendant, the court should not have confined his charge to an actual attack by the deceased upon defendant.

**3.—Same—Charge of Court—Manslaughter.**

Upon trial for murder where the charge of the court upon the issue of manslaughter was in accord with recent precedent there was no error.  Following Waters v. State, 54 Texas Crim. Rep., 322.

**4.—Same—Charge of Court—Murder in the Second Degree—Manslaughter.**

Where upon trial for murder the court's charge as a whole upon the issue of murder in the second degree and manslaughter went no further than to advise the jury that if they found defendant guilty they were required to state the grade of the offense and name the punishment assessed therefor, but if they did not find that the killing was unlawful they should acquit the defendant, there was no error.

**5.—Same—Charge of Court—Impeaching Testimony.**

Where upon trial for murder the court's charge upon impeaching testimony gave the jury the right arbitrarily to disbelieve or discredit the testimony of the witnesses, the same is error.

Appeal from the District Court of Bexar.    Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Chester H. Terrell,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the third appeal of this case.    On the first trial appellant was convicted of murder in the first degree and his punishment assessed at death, 51 Texas Crim. Rep., 367, 103 S. W. Rep., 911.    In this opinion there is a general but fairly correct statement of the facts in the case, which were to some extent, however, qualified on the trial of this case.    On the second trial appellant was convicted of murder in the second degree and his punishment assessed at twenty-five years confinement in the penitentiary.    The opinion on appeal on this conviction is reported in 54 Texas Crim. Rep., 11, 111 S. W. Rep., 403.    The conviction on this trial was reversed for the error of the court in charging on the matter of impeaching testimony.    Appellant was tried the third time in the District Court of Bexar County, and on the 15th day of October, 1908, was again convicted of murder in the second degree and his punishment assessed at confinement in the penitentiary for twenty-five years.    The case is again before us on appeal duly perfected and there are perhaps more numerous objections made to the proceedings of the court below on this appeal than on either of the former appeals.

1.    We think the case must be reversed on account of the action of the court in permitting the district attorney to refer to and dis-

cuss the former conviction of appellant. This action of the district attorney was duly excepted to at the time and the point saved by proper bills. Among other things, on cross-examination, the district attorney asked the witness, Isaac Walker, "Didn't you know it, and don't you know the papers were full of the Benson trial, and didn't you know the jury assessed the death penalty one month after the killing?" This question and the answer sought to be elicited thereby was objected to by counsel for appellant for the reason that the district attorney had no right to refer to the death penalty having been given, and because he stated the fact in the presence of the jury that the death penalty had once been assessed against appellant. The court explains, in approving this bill, that the question objected to was permitted on cross-examination of the witnesses who testified that they had not testified at the first trial, but had kept quiet; that the district attorney then pressed the witnesses, saying how could they remain silent and not tell what they knew when the death penalty had been found by the jury, and the case had been affirmed by the higher court. This, the court states, was allowed as going to the credibility of the witnesses, and the weight to be given to their testimony by the jury. The court also states, in his explanation, that the death penalty was not in this case and the court so informed the jury at the time and it was not referred to except to affect the witnessess as stated, and to show the jury the improbability of their testimony, they remaining silent under such circumstances. The former conviction, the court says, was a part of the history of the case, and, he adds, the attorney for the defendant and the witness Neunhoffer had mentioned the fact to the jury that the knife was found while the case was on appeal.

By another bill it is shown that in his argument to the jury the district attorney frequently commented on the death penalty having been given, in connection with the testimony of Isaac Walker and Ora Lee Moseley, and stated they should not be believed because they remained silent, knowing that the death penalty had been given. These statements of the district attorney were objected to by counsel for appellant and exception reserved for the reason that the commenting on the fact that a death penalty had been given in the case heretofore prejudiced the rights of the defendant before the jury, and he had no right to refer to the death penalty having been given at the first trial. This bill is allowed with the explanation that the testimony was admitted solely for the purpose of going to the credibility and weight of the testimony under the circumstances and the further statement is made that on the second trial, defendant was found guilty of murder in the second degree and the death penalty could not be considered by the jury in this case and they were so informed by the court and no written instructions were asked by defendant's counsel on this subject. It will be noted that

according to the explanation of the court, the only reference made by defendant's counsel to the witness named was an incidental reference to the effect that the knife . had been found while the case was on appeal. Whether this appeal would be considered by the jury as referring to his former conviction or an appeal in an effort to obtain bail, does not appear and is so casual and incidental as not probably to have been such as would have injured appellant and was not such a statement as would warrant, as we believe, the district attorney to in terms refer to the fact of a former conviction of appellant and that that conviction had resulted in the assessment of the penalty of death. Article 823 of the Code of Criminal Procedure is as follows: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." It has been uniformly held in this State that it is reversible error for counsel in argument on a second trial to allude to a defendant's conviction on a former trial. Hatch v. State, 8 Texas Crim. App., 416; House v. State, 9 Texas Crim. App., 567; Moore v. State, 21 Texas Crim. App., 666; Fuller v. State, 30 Texas Crim. App., 559; Richardson v. State, 33 Texas Crim. Rep., 518. It has also been held that evidence with regard to the fact of defendant's previous conviction is inadmissible testimony. Richardson v. State, 33 Texas Crim. Rep., 518; Hargrove v. State, 33 Texas Crim. Rep., 431. In the case of Hamilton v. State, 40 Texas Crim. Rep., 464, 51 S. W. Rep., 217, it is said: "If the private prosecutor can not allude to the former conviction in his argument by the same reasoning he should not be permitted to allude to it during the progress of the trial. Here he not only alluded to it, but alluded to it in the adducing of testimony in a manner calculated to give weight to that testimony, that is, he was permitted to prove by a juror who tried appellant at a former trial that not only he, but the entire jury, believed the prosecutrix's testimony on that trial; and such illegal testimony could have no other result than to prove hurtful to appellant, and it evidently was brought out for that purpose. The jury convicted appellant, and gave him 25 years. They may or may not have convicted him without this illegal testimony, or they may, without this testimony, have given him a less term of years in the penitentiary. We can not tell. We only know that the evidence and the remark of the private prosecutor were improper and illegal, and were of a character calculated to prejudice appellant. Washington v. State, 23 Texas Crim. App., 336, 5 S. W. Rep., 119." In the later case of Coleman v. State, 49 Texas Crim. Rep., 82, 90 S. W. Rep., 499, in respect to a matter not so serious as this, the court reversed the judgment of conviction. In that case it seems that the district attorney alluded to and discussed the facts of another case, and it seems, according

to the statement of the court, the argument was drawn out by some remarks of appellant's counsel. According to the report the matter arose in this way: "That the case referred to was a murder case, somewhat similar to this case, and that case showed the death penalty had been inflicted, and such allusion was calculated to influence the jury and prejudice their minds against defendant. The court signed the bill by stating, 'that the district attorney in his closing argument, in answer to some authorities read by counsel for defendant, showed what it took to make murder in the first degree. As soon as objections were made, I told the district attorney it was not proper or right to discuss the fact before the jury in a case not on trial.' In the following bill it is shown: 'Defendant's counsel claimed the fact that the defendant told the officers about the occurrence and surrendered was proof of his innocence. The district attorney then in reply said that he knew of a case of a negro named Spencer, and that counsel for defendant, and some of the jury knew of said case, where defendant came across the river to Red River County, surrendered to the officers, and was subsequently convicted and sent to the penitentiary for a term of 99 years.' Appellant objected to this for various reasons, and the court signs the bill with the explanation that the court instructed the jury not to consider the remarks of the district attorney. These remarks were highly improper, and the objection to them should have been sustained at once. It is true that the court withdrew the remarks, or rather instructed the jury to disregard them. Still the remarks were made, and evidently found lodgment in the minds of the jury. If the facts stated by the district attorney in his argument had been introduced and offered before the jury, they would have been clearly inadmissible, and the admission of them before the jury would have required a reversal of the judgment. Why matters of this sort should continually occur in the trial of cases we do not understand. Under the theories of our criminal jurisprudence every case should be tried upon the basic principle of our law, which is the presumption of innocence and reasonable doubt; and all matters that infringe those rules should be carefully excluded from the jury, whether in evidence or argument. It hardly answers this sort of erroneous proceedings that subsequently the court withdraws the matter from the consideration of the jury. It may or may not; it is owing to the seriousness of the statements. But these matters have become so frequent, and we find them in so many records, that we feel called upon to discountenance them. Trial courts should promptly suppress such remarks and argument, and attorneys refrain from using them, to the end that only fair and legitimate testimony and argument may be considered by the jury in disposition of cases involving life and liberty." The importance of this statute and the intent and meaning of it are thus expressed by this court in the case of Hatch v. State, 8 Texas Crim. App., 416: "This statute

either means something or it means nothing. If it means anything, then its violation is an injury done to the rights of the defendant, for which the judgment in this case should and must be reversed.

"It was said by the court in Tucker v. Henniker, 41 N. H., 317: 'It is irregular and illegal for counsel to comment upon facts not proven before the jury as true, and not legally competent and admissible as evidence. The counsel represents and is a substitute for his client; whatever, therefore, the client may do in the management of his case may be done by his counsel. The largest and most liberal freedom of speech is allowed, and the law protects him in it. The right of discussing the merits of the cause, both as to the law and the facts, is unabridged. The range of discussion is wide. He may be heard in argument upon every question of law. In his addresses to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings, to arraign the conduct of parties; impugn, excuse, justify or condemn motives, so far as they are developed in evidence; assail the credibility of witnesses when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance on the stand, or by circumstances. His illustrations may be as various as the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wings to his imagination.

'To his freedom of speech, however, there are some limitations. His manner must be decorous. All courts have power to protect themselves from contempt, and indecency in words or sentiments is contempt. . . . When counsel are permitted to state facts in argument and to comment upon them, the usage of courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is denied.'

"And so in Brown v. Swineford, 44 Wis., 282, the following appropriate language upon this subject is used by the court:

'The profession of the law is instituted for the administration of justice. The duties of the bench and bar differ in kind, not in purpose. The duty of both alike is to establish the truth and to apply the law to it. It is essential to the proper administration of justice, frail and uncertain at the best, that all that can be said for each party, in the determination of fact and law, should be heard. Forensic strife is but a method, and a mighty one, to ascertain the truth, and the law governing the truth. It is the duty of the counsel to make the most of the case which his client is able to give him; but counsel is out of his duty and his right, and outside of the principle and object of his profession, when he travels out of his client's case and assumes to supply its deficiencies. Therefore is it that the nice sense of the profession regards with such distrust and aversion the testimony of a lawyer in favor of his client. It is the duty and right of counsel to indulge in all fair

argument in favor of the right of his client; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. But an advocate may make himself the alter ego of his client, and indulge in prejudice against his adversary, as far as they rest on the facts in the case. But he has neither the duty nor right to appeal to prejudices, just or unjust, against the adversary, dehors the very case he has to try. The very fullest freedom of speech, within the duty of his profession, should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof.'

"We might cite many other authorities to the same effect, but will content ourselves with making the following extract from the opinion of our Supreme Court in Thompson v. The State. Moore, J., commenting upon the character of discussion indulged in by the district attorney in his concluding address to the jury, says: 'We deem it, however, of sufficiently grave importance, and so highly objectionable, as to require the decided condemnation of the court. Zeal in behalf of their client, or desire for success, should never induce counsel in civil causes, much less those representing the State in criminal cases, to permit themselves to endeavor to obtain a verdict by arguments based upon any other than the facts in the case, and the conclusions legitimately deducible from the law applicable to them.' 43 Texas, 268." We can not ourselves conceive of anything that would have been more hurtful or injurious to appellant's rights than this argument and reference of the district attorney. It not only conveyed the information to the jury that in a trial had in the same court only a month after the homicide, another jury with the facts fresh on the minds of the witnesses, had found appellant guilty, but the further information that in their judgment the offense was so flagrant as to entitle the State to the assessment of the death penalty. We can well understand how any jury with this information thus conveyed would have been reluctant to have acquitted appellant and how natural it would have been for them, if they should convict him at all, to assess a penalty, having some relation at least, to the severity of the penalty assessed on the first conviction. We can not sanction a conviction thus obtained and feel that we have no recourse but to reverse the case if we are to follow the law and give effect to the statutes in force in this State.

2. There are a number of other questions raised on the appeal which, perhaps, in view of another trial, it is proper we should discuss. Complaint is made of the charge of the court in many particulars and exception is urged that in charging, both on murder in the second degree and on manslaughter, the court charged alone with reference to an actual attack and does not charge the jury with reference to an attack about to be made by the deceased, or

give appellant the benefit of the reasonable apprehension of danger as it appeared to him. The charge of the court is, indeed, subject to this criticism, though when the court comes to charge on self-defense, the instruction is not subject to serious criticism. We suggest that in framing the charge on another trial, that the court should conform to the suggestions pointed out in appellant's motion for a new trial.

3. Complaint is also made of the charge of the court in respect to the issue of manslaughter and the definition given by the court is seriously complained of. The case was tried and briefs for appellant were filed before the handing down of the opinion of this court in the Waters case, 54 Texas Crim. Rep., 322, 114 S. W. Rep., 628, and in the light of that decision and under the rule now established, we do not think the charge subject to the criticisms leveled against it.

4. A reversal is also sought for the reason, as claimed, that under the charge of the court the jury were in effect directed to find appellant guilty of either murder in the second degree or manslaughter, and we are cited on this subject to the case of Haynes v. State, 2 Texas Crim. App., 84. We think the case at bar easily distinguishable from the charge contained in that case. Here the court instructed the jury as follows: "Should you find the defendant guilty of murder in the second degree, or guilty of manslaughter, you will state of which offense found guilty; and for whatever offense you may find him guilty, you will affix the punishment for that crime as above directed.

"If from the evidence you believe beyond a reasonable doubt that the defendant is guilty of some grade of culpable homicide, but you have a reasonable doubt whether the offense (if any) is murder of the second degree or manslaughter, then you must give the defendant the benefit of the doubt, and in such case if you find him guilty it could not be of a higher grade of offense than manslaughter.

"If you do not find that the said Albert Miller is dead, and that the defendant unlawfully killed him, then you will return a verdict of 'not guilty.'" It will thus be seen, reading the charge as a whole, that this instruction went no further than to advise the jury that if they found appellant guilty they were required to state the grade of the offense and name the punishment assessed therefor, but that if they did not find that the killing was unlawful they would acquit him.

5. The charge of the court on impeaching testimony is not correct, and we are not sure but that the case should be reversed for that alone. This charge is as follows: "A witness may be impeached by proving that he or she has sworn differently from what he or she does before you, concerning matters material and relevant to the issue. The defense has introduced certain portions

of the evidence of the State's witnesses, Beulah Miller, Jesse Baird, Arthur Miller, Willie Taylor, Dr. Balderserelli and Robert Jefferson, taken at former hearings herein to impeach them, by showing that they had given contradictory testimony to that given by them now before you.

"The State has also introduced portions of the evidence of witnesses Emmet Polk and Sarah Jones taken at the inquest trial and a portion of the testimony of Will Benson taken at a former hearing to impeach them by showing that they had given contradictory testimony on said occasions to that given now.

"The object of both State and defendant in introducing the impeaching testimony is to have you disbelieve and not accept as true, and to refuse to give credence to the testimony of said witnesses, as given before you.

"Impeaching evidence is used for the purpose of affecting the weight of the evidence and the credibility of the witnesses giving the testimony; and to enable you to attach such weight to it, if any, as you may think proper.

"You may or may not believe the testimony so attacked, or you may or may not believe the attacking testimony; and you may take all the evidence before you altogether and give such weight to either or both as you may see proper, should you so see fit, in arriving at a verdict herein." This language follows pretty closely the opinion of this court on the former appeal where the effect of the impeaching testimony was discussed, but it is not always permissible or proper, especially where a statute prevents the court commenting on the weight to be given testimony, to give in charge language which is undoubtedly the law. In the case of Johnson v. State, 9 Texas Crim. App., 558, the court instructed the jury in substance that where the evidence was conflicting it was the duty of the jury to reconcile the conflicting testimony, if in their power to do so, or if they could not do so, it was their province to "give faith and credit to such as you think entitled to belief, and to disbelieve such as you see proper to disbelieve." In passing on this charge the court said: "Under repeated decisions of this court the objections seem to have been well taken and the charge gives the jury the right arbitrarily to disbelieve or discredit the testimony and is an invasion of the province of the jury." A similar ruling has been made in many cases. See Pharr v. State, 7 Texas Crim. App., 472; Butler v. State, 3 Texas Crim. App., 48; Wilbanks v. State, 10 Texas Crim. App., 642; Knight v. State, 7 Texas Crim. App., 206.

6. There are a number of other questions raised by the assignments and noted in appellant's brief. Some of these are not of a character likely to arise on another trial, nor, do we believe, that in respect to any of them there is such error as would justify a reversal.

For the grounds stated above the judgment is reversed and the cause remanded.

*Reversed and remanded.*