No. 202.   Decided February 9, 1910.

**Forgery—Argument of Counsel—Allusion to Other Case.**

Where upon trial for forgery the evidence showed that the defendant remained in the community after the alleged commission of the offense, it was reversible error to permit counsel for the State over the objection of the defendant to allude to another case of forgery in which the accused had been convicted, to the  effect that he too remained in the community; it appearing from the record on appeal that some of the same jurors who tried defendant convicted the accused in the case to which the State's counsel referred; and that the court refused to withdraw the remarks of the counsel from the jury. Following Davis v. State, 54 Texas Crim. Rep., 236; 114 S. W. Rep., 366.

Appeal from the District Court of Atascosa.   Tried below before the Hon. E. A. Stevens.

Appeal from a conviction of forgery; penalty, three years imprisonment in the penitentiary. ·

The opinion states the case.

*Geo. A. Martin* and *W. W. Walling,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Jᴜᴅɢᴇ.—Appellant appeals from a conviction had in the District Court of Atascosa County, on April 15 of last year, finding him guilty of forgery and assessing his penalty at three years in the State penitentiary.

There are a great many questions raised on the appeal, but the

judgment will be reversed on the ground of the improper argument of the district attorney. As the record comes to us it seems to us doubtful if, under the facts stated, a conviction ought to be permitted to stand. We are, however, scarcely prepared in view of the action of the learned trial court in overruling the motion for new trial to set aside the conviction on this ground, but we think, in view of the entire record, that the argument of counsel for the State was such as under all the circumstances to imperatively require a reversal of the judgment.

The testimony shows, as the name implies, that the appellant was a Mexican. He seems to have had very slight, if any, familiarity with the English language. The instrument, the forgery of which he was charged, was in this language: "San Antonio, Texas, Sep. 10-1907. No. 8, D. & A. Oppenheimer Bankers. Pay to the order of Seferino Garcia Fifteen Dollars. E. W. Braens $15.00." T. F. Dossey testified that about the 19th day of September, 1907, appellant came into his butcher shop one afternoon and wanted to buy some twenty or thirty cents worth of meat, and he said to him, "Why do you buy so small amount when you live so far away from town?" and that appellant replied, "Well, this is all the change I have got, but if you will cash a fifteen dollar check for me, which I have, I will buy a dollar's worth of meat." This being agreed to appellant handed him the check in question and he thereupon asked him, appellant, where he got it and where the maker of the check lived, to which appellant replied he lived above Amphion; that he then asked him if he was working for him and he answered, "Not now, but before, yes." Mr. Dossey also testified that he could speak some Mexican—enough to transact business— and that he and appellant had talked to each other in Mexican. At this point an interpreter was called by the State and the witness Dossey repeated in Mexican the words used by him in speaking to appellant and the answer of appellant, which were translated into English, as follows: "Where does the man live? (referring to the maker). A. Above Amphion. Are you working for him? Now, No. Before, Yes." Mr. Dossey also testified that he had known appellant several years, and that he cashed the check more upon his having it in his possession, than upon any statement that he made to him as to where he got it, as he did not suspect anything wrong with the check. Jesse D. Oppenheimer, cashier of the firm of D. & A. Oppenheimer, testified that they had no account in the name of E. W. Braens, and that he did not know such a person. By several witnesses for the State it was shown that within their knowledge no such person as Braens lived in Atascosa County, and they were a character of men who we are convinced would have known of such person if he had lived in that county, at least for any considerable length of time. One of these, T. L. Richardson, the sheriff of the county, a witness for the State, testified that he had known appellant intimately for about twelve years and was well acquainted with his general reputation for truth

and veracity, and honesty and fair dealing in the community where he lives, and his reputation in these respects were good. Similar testimony was given by Mr. J. H. Barrow, a merchant of Amphion, Atascosa County. Bayard Fern, justice of the peace of Amphion, also testified that his reputation was good, and that he knew he, appellant, was a hard working and an industrious man. Appellant produced, among others, Ramon Rodriguez, who had theretofore been acquitted of the offense here charged, who stated that on a morning between the 10th and 13th of September, 1907, appellant left the ranch driving two animals in a buggy, a horse and a mule, and leading a three year old bay mare, which he was taking to San Antonio for sale; that he left about 8 o'clock in the morning and returned home the next night without the mare, and told him that he had sold the mare for thirty dollars; that he did not tell him, however, anything about the check. One Catarino Hernandez testified that he lived on the Amphion and San Antonio road, where he had resided for some twenty-five years; that on Friday, the 13th day of September, about 3 o'clock, while working on his gate in front of his house on this road, appellant passed him driving a mule and horse in a buggy, and leading a bay mare, and that having known appellant for quite awhile he spoke to him and appellant spoke to him, witness, and passed on towards San Antonio. Rafael Herrera testified that on the same day he met appellant on Nogalitos Street, in San Antonio; that he was in a buggy and driving a horse and mule and that they stopped and shook hands with each other, when he asked appellant what he came to town for, and appellant replied that he had come to San Antonio to sell a mare, but sold her about six miles south of the city to an American and that he had received in payment for the animal thirty dollars. This witness it seems had lived in San Antonio for something like twenty years, and was employed by the city and was in charge of a gang of men working on the streets. Appellant testified that about the 13th day of September he left home driving a team as stated, and leading a mare and confirms the statements of the persons above named whom he met; that on this trip he sold the mare to an American for $15 in money and a check for $15, which was the check the forgery of which he is charged in this case; that this man, whom he did not know, told him that the check was good anywhere. In reference to the conversation with Mr. Dossey afterwards he says he is satisfied Mr. Dossey did not understand him or that he, appellant, did not understand Mr. Dossey with reference to his having worked for the man who gave him the check; that what he told Mr. Dossey was that he had worked beyond Amphion, but was now working at home this side of Amphion; that he kept the check several days before trying to cash it; that he does not know why he did this, nor why he did not try to cash it while in San Antonio. The above is practically a statement of the case.

On the trial in his closing address to the jury the district attorney

made the following statement: "Gentlemen of the jury: My distinguished friend, Mr. Martin, says that this defendant must have been insane if he passed this check, knowing that the same was forged, because he remained in this community a week or more after he passed it. Why, gentlemen of the jury, only day before yesterday a jury, here in this court, convicted a young man who was charged with altering an order, and he remained in the same community within half a mile of the place where the man lived whose order he altered." This was objected to by counsel for appellant with the statement to the court, among other things, that several members of the jury trying appellant, who are named in the bill of exceptions, were upon the jury in the case of Paul Markowski, this being the case referred to by the district attorney, and asked the court to withdraw said remarks from the jury and the court overruled counsel's objection and permitted him to continue his argument, whereupon the district attorney continued as follows: "Yes, gentlemen of the jury, this is legitimate argument," and reiterated the argument above stated; and further said: "Yes, gentlemen of the jury, the counsel for the defendant always objects when I get next to him, and I am now driving home the spear." This bill of exceptions is signed without qualification. The matter stated was not in evidence, the jurors who had tried Markowski when thus reminded of their verdict in that case were under the strongest compulsion, if they desired to be thought consistent, to be no more lenient in respect to appellant, a Mexican, than they had been to Markowski, a white man. The other jurors were advised of the result of a case, similar to this, of which they had not theretofore heard, and with this as a precedent, it was a strong invitation and a strong inducement for them, in view of the facts so stated, to return a verdict of guilty in this case. That the State would not have been permitted to have proven the conviction of Markowski or the facts of his case, does not need to be stated. Will, therefore, counsel for the State be permitted to get before the jury by a statement from his place at the bar, a fact which he would not be permitted to prove, and the effect of which would be most damaging to appellant? We can not think so. See Davis v. State, 54 Texas Crim. Rep., 236, 114 S. W. Rep., 366.

For the error pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.