### Gertrude Dunn v. The State.

#### No. 2813.  Decided December 3, 1913.

**1.—Gaming—Statutes Construed—Information.**

Where the article of the Penal Code has been held invalid, a prosecution can not be based thereon, and the information should be quashed.

**2.—Same—Information—Private Residence—Appurtenance.**

A private residence can not be an appurtenance to a public road, and where the evidence showed that the premises under defendant's control where the game was alleged to have been committed was the home and private residence of the defendant, the conviction could not be sustained.

**3.—Same—Evidence—General Reputation—Premises—Opinion of Witness.**

Where there was no allegation that the house in which gaming was alleged to have been permitted was a disorderly house, testimony as to the general reputation thereof was inadmissible.

**4.—Same—Argument of Counsel.**

Where, upon trial of gaming, the county attorney went out of the record and discussed matters not in evidence which were objected to by proper bill of exceptions, the same was reversible error.

**5.—Same—Absence of Trial Judge.**

Where, upon trial of gaming, the trial judge absented himself during trial and lost control of the case thereby, the same was reversible error.

**6.—Same—Misconduct of Jury—Facts Dehors the Record.**

The statute prohibits the jury from receiving testimony after they have retired to consider their verdict, and where the record showed this to have been done, the same was reversible error. Courts must observe the statute.

Appeal from the County Court of Rockwall. Tried below before the Hon. J. W. Reese.

Appeal from a conviction of permitting gaming upon defendant's premises, etc.; penalty, a fine of $35.

The opinion states the case.

*T. B. Ridgell,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—The complaint and information charge that appellant unlawfully permitted a game of cards to be played upon premises then and there under her control, the said premises then and there being appurtenances to a public place, to wit: a public road. Under the recent decisions of this court this complaint would not charge

a violation of the statute. The article which would justify or authorize this prosecution was held in the Robertson case, recently decided, to be invalid; that the Legislature did not intend to bring it forward in the Revised Penal Code of 1911, and in doing so they made a mistake. That seems to be the only statute under which this prosecution could have been instituted. The writer did not agree with that opinion and entered his dissent, which speaks for itself. But aside from this, this prosecution can not be maintained, because a private residence can not be appurtenances to a public road, and the evidence shows this was the home and private residence of appellant, which was situated between two public roads. We have searched for some authority which would justify or authorize the holding of a private residence to be an appurtenance to a public road, but have failed to find it. In fact, we do not believe such authority can be found. Mr. Webster defines appurtenance in legal acceptation as "something belonging to another thing as principal, and which passes as incident to it, as a right of way, or other easement to land; a right of common to pasture, an outhouse, barn," etc. We do not understand how a private residence can be an appurtenance to a public road.

The State asked the following question: "What was the general repute as to who was in possession and control of these premises where defendant stayed?" Many objections were urged by appellant but overruled by the court, which we deem unnecessary to recapitulate, and the witness answered, "It is reputed that defendant and Henry Tillman were in control of said premises." As urged by appellant, this was not proper testimony; it was hearsay, opinion of the witness, and was not admissible for the purpose of proving control in the defendant. These objections, we think, are well taken. There was no allegation that the house was a public house of prostitution or disorderly house, but simply the private residence of the appellant.

The county attorney used the following remarks in his closing speech: "This negro, defendant, is but a common prostitute and that is the reason Bud Sebastian was hanging around there. She has run a regular whorehouse and it is time the juries were breaking it up and putting a stop to it. The jury may turn her loose and license such conduct but as long as I am county attorney I will continue to prosecute them and it is up to the jury to do their duty." Exception was promptly taken to these remarks and an effort made to have the county attorney stopped and the jury instructed not to consider same, but the judge presiding was not present in the courtroom or in hearing of defendant's counsel or in view of the trial, but was at the time downstairs in the back room of the sheriff's office talking over the telephone; that the judge returned and the attorney for defendant told the judge of the remarks the county attorney had made, and that he had gone out of the record and made remarks prejudicial to defendant and such as would tend to inflame their minds; that the court told defendant's attorney that he was downstairs at the time in the back room of the sheriff's office talking

over the phone and out of sight of the courtroom and not in view of same and that he did not and could not hear the remarks, and could not instruct the jury about same because he could not and did not hear them on account of being downstairs, and for that reason would not instruct the jury. Appellant then took his bill of exceptions. The court qualifies this bill as follows: "At the time it is claimed the county attorney made the alleged statements, the court was downstairs in sheriff's office talking over the telephone and could not see or hear remarks. That sheriff's office is out of hearing and view of courtroom and the court not hearing remarks and not knowing, only from information, as to what was said and not being requested to instruct the jury as to not considering remarks of county attorney. The court did not understand that defendant asked for any instructions, but merely complained that he desired to object to remarks, and the court was not present. With this qualification same is approved." He further qualifies the bill as follows: "The court was not asked to give instructions to jury to not consider alleged improper remarks and for that reason did not instruct jury not to consider said alleged remarks." The latter was the second qualification to the bill. This bill seems to present two errors, first, that the court was absent during the trial and lost control of the case, which has been held to be erroneous, and, second, that the county attorney went out of the record and talked about things that were not in the record.

Another bill recites that Meredith, being sworn, states he was in the jury room that tried defendant in this cause; that he was foreman of the jury. "I remember while we were out considering the case that Mr. Ferguson, one of the jurors, stated that some time ago he was deputy sheriff in this county and that he got well acquainted with defendant. That she gave them lots of trouble and that she was a bad character; that the other officers went to her house in Rockwall County and come mighty near catching them gambling; that he made other remarks about what he knew of defendant; that he could not remember what they were. That same did not influence him in his verdict. That he believed that at time remarks were made that the jury had voted her guilty, but had not voted the penalty; that some of the jurors wanted to fine her one hundred dollars." C. C. Ferguson, being sworn, testified: "I was on the jury that tried defendant in this case. I remember stating to jury that when I was deputy sheriff I went to this house of defendant and we liked to have caught them gambling; that I knew defendant and she was a tough character. This was after we had voted her guilty. I made the statement in the jury room to the jury but it did not influence any of them. We had not voted the penalty at the time I made the statement. We had agreed not to say anything about me saying that in jury room." This was urged in connection with the motion for new trial. The statute prohibits the reception of testimony after the jury has retired to consider of their verdict. This is made by statute a ground for new trial. This

testimony seems to be pretty much along the same line as the county attorney's argument. We 'call .attention to these matters so that they will not occur in the trial of other cases. Our statutes were solemnly passed by the Legislature, or supposedly so at least, for observance, and the legislative department had the authority to enact this legislation and demand respect and obedience to such enactment by all the constituted authority of the State. The courts will take due notice to govern themselves in obedience to the legislative will where they have authority to enact such legislation. We hope these matters will cease to occur in the trial of the cases.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*