### E. V. MARSHALL v. THE STATE.

No. 3759.   Decided November 10, 1915.

Rehearing granted for the State, and case affirmed January 12, 1916.

**1.—Murder—Evidence—Dying Declarations.**

Where, upon trial of murder, the dying declarations of deceased by the witnesses Cook and Middleton were properly admitted, although the State should have shown by more positive and affirmative testimony that deceased was conscious of approaching death and had no hope of recovery, etc., yet there was no reversible error in admitting said dying declarations.

**2.—Same — Argument of Counsel — Dying Declarations — Practice on Appeal.**

Where, upon trial of murder, the court admitted certain dying declarations of the deceased and refused to admit others, and defendant's counsel commented on the weakness of those which were admitted in evidence, to which counsel for the State replied by quoting those which were not admitted and pointed to counsel for defendant saying that he was responsible in not having them admitted, and all this rejected testimony had been brought out in the hearing of the jury when the court had refused to admit it, and that it was practically impossible that the argument of State's counsel thereon influenced the jury in the slightest degree to find the defendant guilty of murder or enhance his punishment therefor, the court submitting both manslaughter and aggravated assault, and no charge was requested by the defendant that the jury disregard said argument, the court remarking at the time that he sustained defendant's objection thereto, there was no reversible error. Harper, Judge, dissenting.

**3.—Same—Attorney and Client—Bystander's Bill.**

Where the bystander's bill was made by defendant's attorneys, the same does not come within the meaning of the statute.

**4.—Same—Argument of Counsel—Decisions Pro and Con.**

While the minority opinion cites many cases on the question of the argument of State's counsel, the majority opinion cites the case of Mooney v. State, 176 S. W. Rep., 52, and other cases in support of the ruling in the instant case.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of murder assessing the penalty at fifteen years imprisonment in the penitentiary, the evidence amply supported the conviction, there was no reversible error. Harper, Judge, dissenting.

**6.—Same—Argument of Counsel—Rule Stated.**

Although there is some apparent conflict of opinion in the decisions of this court and the opinions thereof have not always kept in mind the proper rules

'applicable in the discussion and condemnation as reversible arguments of prose-
cuting attorneys, yet the better rules on this subject are clearly and distinctly
laid down in many leading cases and which are followed in the opinion of the
instant case, where all the matter objected to by counsel for defendant occurred
before the jury and no injury could have resulted to the defendant on account
of the argument of the State's counsel. Following Bass v. State, 16 Texas Crim.
App., 62, and other cases. Harper, Judge, dissenting.

Appeal from the District Court of Milam. Tried below before the
Hon. J. C. Scott.

Appeal from a conviction of murder; penalty, fifteen years imprison-
ment in the penitentiary.

The opinion states the case.

*Henderson, Kidd & Gillis* and *J. W. Garner,* for appellant.—On ques-
tion of declaration of deceased: Leadbetter v. State, 23 Texas Crim.
App., 247; Ex parte Fartheree, 34 Texas Crim. Rep., 594; Jones v.
State, 33 id., 492; Martin v. State, 36 id., 632; Lockhart v. State, 53
Texas Crim. Rep., 589, 111 S. W. Rep., 1024.

On question of argument of counsel: Askew v. State, 54 Texas Crim.
Rep., 414, 113 S. W. Rep., 287; Daniels v. State, 71 Texas Crim. Rep.,
662, 160 S. W. Rep., 707; Davis v. State, 54 Texas Crim. Rep., 236,
114 S. W. Rep., 366; Smith v. State, 55 Texas Crim. Rep., 563, 117
S. W. Rep., 966.

*C. C. McDonald,* Assistant Attorney General; *Robt. M. Lyles* and
*W. C. Davis,* District Attorney, for the State.

HARPER, JUDGE.—Appellant was convicted of murder, and his pun-
ishment assessed at fifteen years confinement in the penitentiary.

It is made to appear by the record that the deceased, Marvin Williams,
and his wife had parted, and his wife had returned to her mother's
home; that deceased was living with Earl Cook. On Friday before
the homicide on Monday, deceased went to the home of his mother-in-
law and there conducted himself improperly, firing off a pistol and
doing other unbecoming acts. The matter was reported to the justice
of the peace, and a complaint sworn out charging deceased with carry-
ing a pistol. The justice issued a warrant and delivered it to the con-
stable of the precinct, Mr. J. D. Hamilton. On Monday, when Ham-
ilton decided to go after deceased and arrest him on the warrant, he
went to the place of business of appellant and requested him to go with
him. Appellant got in the buggy with Hamilton and they started,
appellant being unarmed. They stopped at a drug store and there
the city marshal, John Bonds, gave appellant a pistol. When the con-
stable and appellant arrived at Earl Cook's they ascertained the de-
ceased was at the home of Mr. Will Cook. They went to Will Cook's
and the constable arrested deceased. After the arrest, the evidence
conflicts as to what occurred, but all agree that deceased fled, and the
constable and appellant pursued him. Several shots were fired, as the

officers say, to frighten deceased. None of them struck deceased except one, and as to the conditions under which this shot was fired, the evidence is in conflict. The State relied on the statements of deceased, admitted as dying declarations, and according to this statement appellant and deceased outran the constable; that when appellant was near to and close to deceased he stopped to reload his pistol, and said to deceased: "If you don't stop I will kill you," and he, deceased, replied, "That is the only way you will get me," when appellant shot him.

The defendant's contention is that the first shots were fired to frighten deceased and cause him to stop; that appellant overtook him, when deceased turned and began to fight appellant; that appellant struck at him with the pistol, when it fired and the fatal wound was inflicted. The evidence shows deceased was a strong, able-bodied man, weighing about 185 pounds, while appellant would weigh not exceeding 150 pounds.

Will Cook was permitted to testify that after deceased was carried to his home Dr. Kilpatrick was called, appellant having gone with Earl Cook after him, and the doctor told deceased, "if he had any business to attend to or wanted to see anyone he had better attend to it or see them." Shortly after the doctor departed deceased said to witness, "Uncle Will, the doctor is just like I have been. I knew I was going to die and I want to tell you how it was done," and then the witness was permitted to detail, over the objection of appellant, what deceased said about how the fatal shooting occurred. This occurred in the afternoon, and George Middleton was permitted to testify what deceased said to him about 7 o'clock on the evening he was shot, over appellant's objection. Middleton said he remarked to deceased, "Well, you will be sitting up in two or three days," and deceased said, "No, I am bleeding inside. I will never sit up," and then Middleton was permitted to testify as to what deceased said about the difficulty. The testimony of both these witnesses was objected to on the ground that no sufficient predicate had been laid to admit the statements as dying declarations. We have carefully reviewed the authorities cited by appellant, and we can not say the court erred in admitting this testimony, although it would have been better for the State to have affirmatively shown that deceased was sane and in his right mind. This, it seems to us, from reading the record, appears, as there is no evidence that the doctor administered to him any medicine that would and could affect his mind, nor was the wound such a one as would affect him mentally. On another trial though, if the same objection is made to the testimony, it would be better for the State to show by positive and affirmative testimony that deceased was conscious of approaching death and had no hope of recovery; that the declarations were voluntarily made; that same were not made in answer to interrogatories calculated to elicit a particular statement, and that deceased was in his right mind and sane at the time he made the declarations to these two witnesses. This becomes important in this case inasmuch as deceased was carried from Rockdale to Cameron the next day and there made a written statement to the sheriff, which was excluded by the court on the testimony of

Dr. Best, whose testimony was such that it led the court to think that deceased at that time had not given up all hope of recovery, but instead seemed to have a hope of recovery if given proper treatment.

We have said this much in view of another trial, and this brings us to the question which we think requires a reversal of the case. Appellant's counsel, in presenting the case to the jury, argued that but little weight should be given to the alleged dying declaration of deceased as testified to by Cook and Middleton; that when he made such statements he was angry, as men would be under such circumstances, and he (counsel) did not think from the testimony that deceased had given up all hope of recovery, and the statement was not made under the conditions and circumstances which showed that deceased was conscious of approaching death, and with the seriousness which should attend such statements. We think these comments were legitimate and proper, and one counsel was authorized to make in the light of the fact that statements made by the deceased the day after the above statements were made were excluded by the court on the ground that deceased had not at that time given up all hope of recovery. Such comments went to the weight the jury would give to such statements, and was not a criticism of the court in admitting the statement in evidence, which he did admit. The theory of the defense was based on the testimony of Hamilton and appellant, and presented a wholly different state of facts, and it was proper and legitimate for counsel to argue that this evidence was entitled to greater weight and was more reasonable and consistent with all the evidence. And in reply to this it was proper for the State's counsel to insist that the statement was made under a sense of impending death, and, therefore, great weight should be given to it by the jury, and more than should be given to the testimony of Hamilton and appellant, who would naturally be interested in the verdict to be returned. But State's counsel did not stop there. In the bill of exceptions presented by counsel for appellant to the court, it is alleged that the following language was used by counsel for the State in his closing address: "The State endeavored to furnish you, gentlemen of the jury, with the dying declaration of the deceased and if his dying statement made in yonder jail to Ben Nabours, the deputy sheriff, at a time when deceased was in a dying condition and his life blood was flowing in chambers where it was not accustomed to flow, after Dr. Best, his physician, had told him that he was standing in the portals of death and was soon to face his maker and render an account in the courts of heaven of the acts of his life—a solemn statement made in writing by the hands of the deputy sheriff, who had him in custody and at a time when the animosities and prejudices of life had all vanished from his mind and his eyes were lifted upwards to that scene where truth alone is spoken, it is because you (referring to and pointing to defendant's attorney) would not let it come. We offered to prove this solemn dying declaration of this man made under these circumstances and it would be before you now, but for the objections of the defendant's attorneys."

The statement made by deceased to Mr. Nabours had been excluded

by the court, on the ground that it was not shown to be a dying declara-, tion. The court refused to approve the above bill, and appellant under- took to prove it up as a bystander's bill, and it is sworn to by Messrs. J. W. Garner, W. G. Gillis, and T. S. Henderson. All these gentle- men were attorneys for appellant on the trial of the case, and we hardly think they are "bystanders" within the meaning of the statute. Of course, we appreciate that when bills are refused after court has ad- journed, it is difficult to prove them up by others than the attorneys at so late a time, but if the stenographers' Act has brought about a new condition of affairs, rendering a change in the law governing these matters necessary, this should be presented to the Legislature. The courts can not amend the statute. However, when the court refused the above bill, the court prepared one of his own, and files it, and in it is shown:

"After the testimony had been closed, the jury charged and the case was being argued to the jury, defendant's counsel in course of his argu- ment attacked the sufficiency and weight of the testimony of the wit- nesses Cook and Middleton as to the deceased's alleged dying declara- tion and argued to the jury that these witnesses were more or less interested, that Cook was a kinsman and was prejudiced against the defendant and that the testimony of these two witnesses was fragmen- tary in character and it necessarily did not show that the deceased had made the statements under a consciousness of impending death, and with the seriousness which should attend such statement; that they were made in the course of conversation with 'his relatives and friends and under circumstances which show that his mind was inflamed by passion against defendant and that he was giving vent to his feelings rather than making a deliberate statement of the particulars and that the State had not offered the testimony of the witness Dr. Kilpatrick to show that deceased was in such condition as to make his statements dying declarations, and that under these circumstances the jury could not give to the declarations as testified to by these witnesses that high degree of credit to which dying declarations are entitled.

"Thereafter the district attorney, in his closing argument to the jury, called attention to the objection of defendant's attorney to the dying declaration of deceased as testified to by Cook and Middleton, and in a burst of passion and eloquence said: 'They tell you that these are not dying declarations, but at no time did the deceased alter or in any manner change the declarations and statements made by him to Cook and Middleton immediately after the shooting. He did not make any contrary statements to J. D. Hamilton, who brought him from Rockdale to Cameron on the train. He did not make any con- trary statements to Ben Nabours at the jail. For if he had done so, it could have been proven by Ben Nabours at a time when deceased was practically dying and when the death gurgles were in his throat, and about an hour prior to his death; and if the deceased made any such contrary statement different from what he made to Cook and

Middleton, then the reason it is not here is because you (pointing to defendant's attorney) have objected to it.'

"While the district attorney was making this statement, counsel for the defendant was endeavoring to have him stopped, calling upon him to stop and appealing to the judge, who for the moment was not upon the bench, but was standing near by, with his hand on the bench, and before he could resume the bench the above statement had been made in full to the jury. The judge having not understood the language, counsel for the defendant stated to him what the district attorney had said, and stated that he had objected to the remarks and sought to stop them because the statements therein made were not in evidence and had been excluded from the consideration of the jury and were highly prejudicial to the defendant and calculated to inflame the minds of the jury against him and asked the court to admonish and instruct the jury not to consider the statements and to reprimand the district attorney for his gross violation of his privilege and require him to withdraw his said remarks, so that the jury might understand that the statements were improper, and that they could not consider them for any purpose, and that the district attorney was subject to reprimand for having made them. The judge merely remarked, 'I sustain your objection, I don't wish any statements made outside of the records'; but failed to further take notice of defendant's request or to further instruct and admonish the jury concerning said language or to reprimand the district attorney or to require him to withdraw his remarks.

"The defendant excepted to the remarks of the district attorney and to the refusal of the court to instruct the jury as requested by defendant, as hereinabove shown."

This bill, prepared by the court, must under the circumstances be taken as correctly presenting the matter, and in it is shown that the district attorney said: "He (deceased) did not make any contrary statement to Ben Nabours at the jail. For if he had done so, it could have been proven by Ben Nabours at a time when deceased was practically dying and when the death gurgles were in his throat, and about an hour prior to his death; and if the deceased made any such contrary statement different from what he made to Cook and Middleton, then the reason it is not here is because you (pointing to defendant's attorney) have objected to it."

This was improper argument, and should not have been made. If counsel for defendant thought the testimony of Ben Nabours inadmissible, it was his duty to object to it, and it seems the court took the same view of it as did counsel for appellant, and it was improper for counsel for the State to say that "deceased made no contrary statement to Ben Nabours." What he said to Nabours was not in evidence, and it could not be gotten before the jury in this indirect way. This argument would give added strength to the testimony of Cook and Middleton, which had been attacked for various reasons, and coming at the close of the argument would be calculated to influence the jury. A jury at times can not understand why certain testimony is excluded,

and they resent at times the fact it is excluded, and if counsel is permitted to argue that, if they could have heard it, what it would have shown, they are likely to accept the statement of the prosecution as to what it would have shown and given to such statement undue weight.

In this case the evidence discloses appellant had never met deceased, and knew no such man existed until summoned by Hamilton to go with him to make the arrest. The reason for the homicide, whatever it was, arose from incidents attendant upon the attempted arrest. His testimony, the testimony of Hamilton, and the testimony of Will Cook (outside of the dying declaration) would tend strongly to show that appellant, if guilty of any offense, was guilty of no higher grade of offense than manslaughter. And yet, with this closing speech of counsel ringing in their ears, the jury returns a verdict finding appellant guilty of murder, assessing a very heavy penalty. We can not say this improper argument did not contribute to such a verdict being rendered.

The judgment is reversed and the cause remanded.

*Reversed and remanded*

PRENDERGAST, PRESIDING JUDGE (dissenting).—The reversal of this case on the ground stated in the opinion, in my judgment, violates all of the principles heretofore established by this court on the subject, and is contrary to practically all cases heretofore decided on that point Mooney v. State, 76 Texas Crim. Rep., 539, 176 S. W. Rep., 52, and cases therein cited; Martoni v. State, 74 Texas Crim. Rep., 64, 167 S. W. Rep., 349, and cases therein cited.

Both the bill and statement of facts with absolute certainty show (I quote from the bill, which is the same as the statement of facts):

". . . the State proved by the witness Ben Nabours as follows:

"'I was the deputy sheriff in charge of the jail when the deceased, Marvin Williams, was brought over from Rockdale. When he was brought to the jail, I sent for Dr. E. E. Best, the county physician. When he came he examined deceased and said to him, "You are a mighty sick man, and the chances are you will never be any better." I then asked him if there was any word he wanted to send to anybody. He said he wanted to let his uncle know about it. He then told me that he wanted me to write down his statement about how he was shot. I told him I would and I wrote it down in a little pocket memorandum book and he signed it. I have the book here (producing a small memorandum book from his pocket).'

"Here the defendant's attorney objected to the testimony of the witness and to the introduction of any statement because no sufficient predicate had been laid for its introduction as a dying declaration; and the court remarked, 'Is Dr. Best in the courtroom?' The district attorney said, 'Yes, sir.' The court then said, 'I would like to hear him before I rule.' Thereupon Dr. E. E. Best testified:

"'I was called to see the young man Marvin Williams at the county jail. I found him greatly prostrated and in a dying condition. He was not able to talk much. I asked him how it occurred and told him

his condition—that he was a very sick man. He said, "I know it. I may not get better." I said, "You may not get well, and if you do not get well or get better, what do you wish me to do?" He replied, "Notify my Uncle in Rockdale." He remarked from time to time, "You have got to do something for me." I told him, "We may take you to a sanitarium." He said, "Take me anywhere." His attitude seemed to be that he wanted something done for himself immediately. He was in intense pain and wanted relief. He said, "I know I am bad hurt, but I want you to do something for me." At another time he said, "If you don't take me to the sanitarium, I am going to die or I won't get over this." The impression made on me by his remarks was that he was in distress and wanted me to do something to give him relief. He expressed no belief that he was going to get better or that he was going to die. But his remarks impressed me that he was in distress and wanted something done and felt that something must be done right away and probably felt that he wanted me to relieve him from physical suffering because he was in distress.'

"Here the jury was retired by direction of the court and the witness Dr. Best was further examined in the absence of the jury, and after the court had further examined him, the court sustained defendant's objection to the testimony of the witnesses Nabours and Best and excluded the same from the jury and excluded the statement referred to in the testimony of the witness Ben Nabours as a dying declaration."

When Dr. Best testified on the point, appellant again, in the presence and hearing of the jury, objected, because the predicate was not sufficient to offer the said written statement as a dying declaration. It was at that point and after the testimony of both of these witnesses and the objections had been made in the presence and hearing of the jury that the court retired the jury. He then heard Dr. Best further testify on the point, but neither the bill nor the statement of facts gives what further testimony Dr. Best gave before the court out of the hearing of the jury. The court, after hearing this further testimony by Dr. Best, then sustained appellant's objections and excluded said testimony.

There can be no doubt but that the prosecuting attorney could properly argue as he did, with possibly the sole exception of this statement: "Then the reason it is not here is because you (pointing to defendant's attorneys) have objected to it"; simply that and nothing more. Appellant's attorneys at the time objected to that argument of the prosecuting attorney, and the court promptly sustained their objection. They did not, on the trial, attach enough importance to the matter to even ask a written charge from the court to the jury to disregard said argument. As stated, it all occurred in the presence and the hearing of the jury, and they had absolute knowledge at the time said prosecuting attorney made said argument that appellant's attorneys had objected to said proposed testimony and that it was excluded by the court on their objection.

Under the circumstances I think it not only improbable, but prac-

tically impossible, for the prosecuting attorney's argument to have in the slightest degree influenced the jury either to find the appellant guilty of murder or to enhance his punishment therefor. I think it utterly unreasonable that the jury, because of said argument, under the circumstances, ignored their oaths to decide the case on the evidence, and to have decided it, or been in any way influenced in deciding it, because of said argument. To my mind it is utterly unreasonable to think or imagine that the jury, disinterested and wholly unbiased, should ignore all of the evidence in the case, all of the argument of the able attorneys on both sides on the merits of the case, violate their oaths and decide the case, or be influenced in any way in deciding it, because of said one slight short statement of which they each had absolute knowledge, without reference to what the attorney said.

The court submitted both manslaughter and aggravated assault. The jury, under their oaths, after hearing all the evidence, charge of the court and argument of counsel, refused to find him guilty of either manslaughter or aggravated assault, but instead found him guilty of murder, as the evidence amply warranted, if it did not require them to so find. The deceased was shot in the back and killed by the appellant while he was running and forty or fifty yards away from him. To my mind the fact, if it be a fact, that appellant had had no previous acquaintance with the deceased instead of being in his favor is against him. He had no reason or cause whatever to shoot the deceased in the back, while he was running from him, and kill him. The penalty, in my opinion, is not a heavy penalty, considering all the facts of this case. Human life in this State seems to be the only cheap thing in it. Here the appellant, without cause or justification, shoots down the deceased, a young man just past twenty-two years of age, who in all human expectancies would have lived at least his three score years and ten, if not longer, and he and his family and the State is deprived of his life or perhaps fifty years by the appellant; and he should consider himself fortunate indeed if he escapes with punishment of confinement, not deprivation of his life, for even fifteen years. I think fifteen years, or not less than five nor more than fifteen, as his sentence is under the law now, is not a heavy penalty, but a very moderate one.

In my opinion, this judgment should not be reversed, but it should be affirmed.

ON REHEARING.

January 12, 1916.

PRENDERGAST, PRESIDING JUDGE.—We have again reviewed this case and have reached the conclusion that the dissenting opinion heretofore filed correctly decides the question on which the original opinion reversed the case. In view of both opinions, we think it unnecessary to further discuss the question. The dissenting opinion will now be made the opinion of the court.

It is, therefore, ordered that the rehearing herein be granted, the

judgment reversing and remanding the case set aside, and the order now entered will be that the case be in all things affirmed.

*Affirmed.*

HARPER, Judge.—I wish to enter this my dissent to the judgment granting the motion for rehearing and affirming the judgment. I think the case should be reversed, and adhere to the original opinion.

ON REHEARING.

February 16, 1916.

PRENDERGAST, Presiding Judge.—In his dissenting opinion Judge Harper has collated a large number of cases wherein the argument of prosecuting attorneys have been condemned by this court, and some cases reversed because thereof. In a great number of them reversals were not had alone because of such condemned arguments, but they were reversed on other grounds, and what was said of the arguments was more in view of another trial and as a caution to prosecuting attorneys than otherwise.

He has also copied some portions of the opinions of the judges in some of them, and ingeniously contends they apply to the question in this case. But we think what is quoted as said by the judges, when taken in connection with the facts and argument they were discussing in those cases, are inapplicable to this case. It would be a useless waste of time to point out the various distinctions and inapplicability of these cases.

It is unfortunately true the judges in writing opinions have not always had and kept in mind the proper rules applicable in the discussion and condemnation as reversible arguments of prosecuting attorneys. Because of this, some arguments have been condemned as reversible in connection with other reversible errors (and sometimes perhaps without any other reversible error) which should not, and, otherwise, would not, have been.

On the other hand an equally large number of cases as Judge Harper has collated, could be collated, wherein this court has held arguments of prosecuting attorneys objected to, were not cause for reversal, and some of them, apparently at least, much more hurtful to the accused than the argument in this cause could have been. But we see no necessity at this time of collating them.

The rules on this subject are clearly and distinctly laid down in such cases as Bass v. State, 16 Texas Crim. App., 62; Pierson v. State, 18 Texas Crim. App., 524; House v. State, 19 Texas Crim. App., 227; Tweedle v. State, 29 Texas Crim. App., 586; Young v. State, 19 Texas Crim. App., 536; Kennedy v. State, 19 Texas Crim. App., 618; Hatchell v. State, 47 Texas Crim. Rep., 380; Felder v. State, 59 Texas Crim. Rep., 144, and an innumerable number of other cases following these, and to the same effect, and down to this very date.

We correctly stated how all this matter occurred before the jury in the opinion of Judge Prendergast when first written by him as a dissenting opinion. It is unnecessary to again state it, or further discuss the question.

The motion for rehearing is overruled.

*Overruled.*

HARPER, JUDGE (dissenting).—On the original hearing this case was reversed and remanded, Presiding Judge Prendergast dissenting. On State's motion for rehearing the original opinion was overruled and the case affirmed, this writer entering his dissent. Appellant has now filed a motion for rehearing, and I wish to state more fully why I can not agree to an affirmance of the case, and my reasons for thinking such error was committed as should result in a reversal of the case.

In the original opinion, I held that the court committed no error in admitting the testimony of Cook and Middleton as to what they claimed were the dying declarations of deceased. While my brethren express no opinion on this question, I suppose they agree with me, as they affirm the case. However, appellant earnestly insists we were in error in so holding and says there is no testimony showing that deceased was sane at the time he made such declarations, and contends that the testimony would rather suggest that deceased was unbalanced and deranged mentally. In this view I can not concur. It is true the record disclosed deceased, a few days before the homicide, had behaved very unseemly, had cursed and abused his wife, and threatened at one time to kill and burn his wife, but his wife attributed this to meanness and drinking. While the question was not asked the witnesses: "Was deceased sane at the time you were talking with him?" yet they detail a conversation and acts and conduct of deceased, from which no reference could be drawn but that he was sane and rational at the time he made the declarations testified to. As said by Mr. Branch, in his work on Criminal Law, in section 485: "It is enough if it satisfactorily appear in any mode that they were made under proper sanction whether it be directly proved by express language of the declarant or be inferred from his conduct and other circumstances in the case, all of which are resorted to in order to ascertain the state of declarant's mind," citing Morgan v. State, 54 Texas Crim. Rep., 549, and a number of other cases. While, as contended by appellant, it is true the State did not call the attending physician, Dr. Kilpatrick, but relied on the testimony of a kinsman of deceased, Will Cook, and a neighbor, George Middleton, not only to prove the dying declarations, but also the facts that would render the statement admissible, and while we held, and are still of the opinion, that the testimony of these two men was sufficient to render the declarations admissible, yet such facts, in our opinion, but emphasize the error in permitting the district attorney to strengthen and lend additional weight to the testimony of these two men by stating in his closing argument what the deputy sheriff would have testified to had not appellant interposed an objection to his testimony. As stated,

in other words, the objection of appellant to the testimony of Cook and Middleton as to the alleged dying declaration went to the *weight* to be given this testimony and did not render it inadmissible. Appellant's counsel in their argument to the jury took this view and were contending that but little weight should be given to this testimony by the jury, or, as stated by the court in the bill prepared by him: "Defendant's counsel in course of his argument attacked the sufficiency and weight of the testimony of the witnesses Cook and Middleton as to deceased's alleged dying declaration and argued to the jury that these witnesses were more or less interested, that Cook was a kinsman and was prejudiced against the defendant and that the testimony of these two witnesses was fragmentary in character and it necessarily did not show that the deceased had made the statements under a consciousness of impending death and with the seriousness which should attend such statement; that they were made in the course of conversation with his relatives and friends and under circumstances which show that his mind was inflamed by passion against defendant and that he was giving vent to his feeling rather than making a deliberate statement of the particulars and that the State had not offered the testimony of the witness Dr. Kilpatrick to show that deceased was in such condition as to make his statement a dying declaration, and that under these circumstances the jury could not give to the declarations as testified to by these witnesses that high degree of credit to which dying declarations are entitled."

When appellant's counsel had made this argument, the force of it not only apparently impressed the jury, but impressed counsel for the State, and State's counsel became fearful that the jury would give but little weight to this testimony admitted under the predicate they had laid, and circumstances in the case and to strengthen this testimony and cause the jury to give it added weight, they go outside the record and state what they could have proven by a deputy sheriff as to what deceased said on another and different occasion, if appellant had not objected. Or, to put it in the language of the trial court:

"Thereafter the district attorney, in his closing argument to the jury, called attention to the objection of defendant's attorney to the dying declaration of deceased as testified to by Cook and Middleton, and in a burst of passion and eloquence, said: 'They tell you that these are not dying declarations, but at no time did the deceased alter or in any manner change the declarations and statements made by him to Cook and Middleton immediately after the shooting. He did not make any contrary statements to J. D. Hamilton, who brought him from Rockdale to Cameron on the train. *He did not make any contrary statements to Ben Nabours at the jail. For, if he had done so, it could have been proven by Ben Nabours at a time when deceased was practically dying and when the death gurgles were in his throat, and* about an hour prior to his death; *and if the deceased made any such contrary statements different from what he made to Cook and Middleton, then the reason it is not because you (pointing to defendant's attorney)*

*have objected to it.'"*  (Italics ours.)  In what more emphatic language could the district attorney have told the jurors that, if counsel for appellant had not objected to Ben Nabours testifying, he would have proven by him the same testimony as he had proven by Cook and Middleton?  State's counsel had called Ben Nabours to the witness stand and tried to make this proof.  The court had sustained appellant's objection and would not permit Nabours to testify, for the reason that Dr. Best, who was attending deceased at that time, made it apparent that deceased did not then appreciate that he was in a dying condition and had no hope of recovery.  This was twenty-four hours after the statement Cook and Middleton claim had been made to them.  State's counsel must have appreciated the fact that the jury under such circumstances would give but little weight to the dying declarations testified to by Cook and Middleton, and without that statement there would be no evidence to justify a conviction for murder, but the testimony and all the testimony outside of that declaration, would only justify a conviction for manslaughter, if in fact the jury would not find appellant justified under his plea of self-defense.

The writer has searched the authorities, and in his opinion has found no case that would justify a holding that such improper conduct, statement and argument of the district attorney would not present reversible error, where the person on trial is found guilty of the higher grade of offense and more than the minimum punishment assessed.

As said by Judge Hurt, in Parks v. State, 35 Texas Crim. Rep., 382: "It is always within the province of counsel, for either the State or the defendant, to fully cover all the field authorized by the testimony elicited on the trial, and to draw therefrom all legitimate deductions, and to explain the same with argument and illustration; and we would not be understood as in anywise placing a limit to legitimate and proper argument to be indulged in by counsel, either for the State or the defendant.  There are barriers, however, that can not be passed; and, when it is made to appear to us that remarks have been used outside the evidence in the case, especially of a denunciatory character, such as are calculated to inflame the minds of the jury against the defendant, and more especially when it is shown that these remarks were used in the closing argument, with no opportunity to reply on the part of the defendant, so abused, it is the duty of this court to interfere."  See also Thompson v. State, 33 Texas Crim. Rep., 472; Conn v. State, 11 Texas Crim. App., 390.

In Robbins v. State, 83 S. W. Rep., 690, Judge Henderson said: "Bearing in mind that there was no evidence whatever of this, and that none could have been introduced (as in this case) it simply demonstrated how the district attorney attempted to evade the law.  .  .  . It occurs to us that such conduct, even though the court instructed the jury to disregard such argument, would be cause for reversal.  So much of this character of argument was calculated to thoroughly poison the minds of the jury against appellant as a man of the most base and

vicious character, and not only tend to his conviction, but also to increase his punishment. Under the circumstances, it was impossible for the court to withdraw the dagger and heal the wound inflicted at the same time. Rutherford v. State, 67 S. W. Rep., 100."

In Green v. State, 17 Texas Crim. App., 395, Judge Willson said: "It was improper for counsel for the prosecution in the concluding argument to state if defendant's step-daughter had been examined as a witness she would have testified to certain facts. Such statements are not warranted by the evidence; was not legitimate argument, and was not justified by anything said by counsel for defendant in addressing the jury." See also Lawrence v. State, 12 Texas Crim. App., 591.

In Nalley v. State, 28 Texas Crim. App., 387, Judge White said: "Even if the prosecuting officer could have proved what he stated, such testimony would have been clearly inadmissible against defendant unless he had been directly connected with the matter. Favors v. State, 20 Texas Crim. App., 155; Marshall v. State, 5 Texas Crim. App., 273. There being no proof that these overtures to the witness were made by the authority or with the knowledge of the accused, such statement by the district attorney was illegal and unjust, and was highly cal-culated to prejudice the accused. Barbee v. State, 23 Texas Crim. App., 199. Anything Sam Nalley, the brother, might have done in the matter, in the absence and without the knowledge of defendant, was most clearly inadmissible against and could not be binding upon him (Martin v. State, 25 Texas Crim. App., 557) and afforded no reasonable presumption or inference pertinent to the issue in the case for which defendant was on trial, and the court should have so instructed the jury. Tayor v. State, 27 Texas Crim. App., 463. 'No improper means should be resorted to to prejudice the minds of the jury against the defendant in the remotest degree. No testimony should be offered on the part of the prosecution that is not relevant and legal. No remarks should be made by counsel for the State which are not fully warranted by the evidence.' Gazley v. State, 17 Texas Crim. App., 267. That the course of the district attorney in this matter was calculated to prejudice the rights of defendant is, we think, manifest. How far he has been prejudiced, in the absence of any attempt upon the part of the court to obviate and avert the prejudice, it is impossible to tell. The law demands a fair, impartial and legal trial. For this apparent wrong done the defendant in the trial below, the judgment is reversed and cause remanded."

In Exon v. State, 33 Texas Crim. Rep., 461, Judge Simkins sharply criticises district attorneys for stating what could have been proven by a witness had the court not excluded the testimony. He says: "Now the evidence was excluded by the court, but the district attorney informed the jury that the entire grand jury would have sworn to the fact that Mrs. Exon stated she saw her husband and daughter in a compromising position. There can be no question as to the importance of this testimony. The statement of Mrs. Exon before the grand jury

would, therefore, be naturally taken by the jury to be strongly corroborative of her daughter's testimony," and the case was reversed.

In Clark v. State, 23 Texas Crim. App., 260, Judge Willson said: "Counsel for the State, in his closing argument, alluded to certain testimony offered by the State, and which had been rejected by the court, and stated he could have proven certain facts by certain testimony had not the defendant interposed objections. This was not legitimate argument, was injurious error, and should have been promptly and emphatically condemned by the court, and its injurious tendency, so far as possible, removed from the minds of the jury." And in commenting on improper testimony being injected into the case in the district attorney's closing argument, Judge Willson said in Tillery v. State, 24 Texas Crim. App., 251: "These matters were wholly foreign to the case on trial, without any support in the evidence and were calculated to operate on the minds of the jury prejudicially to the defendant. These improper remarks, if there was no other apparent error in the record, would justify, if not demand, a reversal of the case."

Judge White so announces in Fuller v. State, 30 Texas Crim. App., 559; Judge Simkins, in Weatherford v. State, 31 Texas Crim. Rep., 530; Judge Henderson, in Beardon v. State, 46 Texas Crim Rep., 144, and when Judge Ramsey succeeded that learned justice, he, in the case of Davis v. State, 54 Texas Crim. Rep., 236, reviewed the authorities in this State and laid down the rule when improper argument will be cause for reversal. After discussing the authorities he says: "And it has been held that, where the remarks of the prosecuting attorney in argument were excepted to, but no charge in regard to them was asked, no error is presented. This language has been so frequently used by this court that it is not singular that the learned trial judge seemed to attach much importance to the fact that no charge was asked by counsel for appellant instructing the jury to disregard the improper argument objected to. We think, however, the true rule in respect to this matter may be thus stated, that unless the remarks of counsel for the State are obviously of a character to impair the rights of the defendant or prejudice his case before the jury, such remarks, though improper, will not be considered for reversal unless a charge was asked and refused and exception reserved (Lancaster v. State, 36 Texas Crim. Rep., 16), and that it follows as a necessary corollary from this doctrine that where the improper argument is of such a grave character as to render it obviously injurious and hurtful, and the matter is properly preserved by bill of exceptions, that the fact that no special charge was asked instructing the jury to disregard same, will not of itself deprive the appellant in a proper case, of reversal of a judgment of conviction." And he applies it to a case wherein were discussed statements of extraneous facts, as in this case.

In Taylor v. State, 50 Texas Crim. Rep., 560, Judge Brooks said: "It is true no special charges were asked, but, nevertheless, in the light of this record this argument is so highly prejudicial as to exclude every

other reasonable hypothesis then that it was prejudicial to the rights of appellant. It follows, therefore, that the court erred in not granting a new trial to appellant on account of the argument and statements of the county attorney." Powell v. State, 70 S. W. Rep., 218, is another case wherein Judge Brooks reversed the case solely because of improper remarks, and they were deemed so hurtful in that case that the case was reversed even though the court instructed the jury not to consider the remarks.

Mr. Branch, in his work on Criminal Law, section 62, lays down the rule: "Error for State's counsel to get before the jury in argument a fact which he would not be entitled to prove and the effect of which is damaging to defendant," citing Jenkins v. State, 49 Texas Crim. Rep., 457; Rodriquez v. State, 58 Texas Crim. Rep., 275, 125 S. W. Rep., 404; McKinley v. State, 52 Texas Crim. Rep., 182; Askew v. State, 54 Texas Crim. Rep., 414; Baughman v. State, 49 Texas Crim. Rep., 33; Coleman v. State, 49 Texas Crim. Rep., 82; Cline v. State, 71 S. W. Rep., 23; Turner v. State, 39 Texas Crim. Rep., 322; Battles v. State, 53 Texas Crim. Rep., 202; Brice v. State, 37 Texas Crim. Rep., 38; Pollard v. State, 33 Texas Crim. Rep., 197. Many other cases could be cited written by the learned judges who have preceded the writer on the bench, and since he has been honored with this position he has endeavored to follow the rules of law as established by them in this, as in other instances.

In the recent case of Bullington v. State, 78 Texas Crim. Rep., 187, 180 S. W. Rep., 679, the writer had occasion to express his views in a case wherein counsel for the State in argument had injected into the case evidence that was not in the record, and we held it presented reversible error, even though no special charge was presented in regard thereto. In that case we said: "The rule is that if the remarks are of such character that instructions not to consider same would not remove from the minds of the jury the prejudicial and harmful effect of the argument, it will present error even though no written charge was requested." And such rule apparently received the approval of all members of the court, and such is the rule, I think, the court has been following since he has been a member of the court. See Harwell v. State, 61 Texas Crim. Rep., 233; Clements v. State, 61 Texas Crim. Rep., 161; Coffman v. State, 62 Texas Crim. Rep., 88; Paris v. State, 62 Texas Crim. Rep., 354; Burrell v. State, 62 Texas Crim. Rep., 635; Johnson v. State, 63 Texas Crim. Rep., 50; Davis v. State, 64 Texas Crim. Rep., 8; Grimes v. State, 64 Texas Crim. Rep., 64; McMillan v. State, 65 Texas Crim. Rep., 319; Rushing v. State, 62 Texas Crim. Rep., 309, 137 S. W. Rep., 372; Williams v. State, 66 Texas Crim. Rep., 662, 148 S. W. Rep., 306; Beaver v. State, 63 Texas Crim. Rep., 581, 142 S. W. Rep., 11; Thompson v. State, 67 Texas Crim. Rep., 660, 150 S. W. Rep., 181; Liner v. State, 70 Texas Crim. Rep., 75, 156 S. W. Rep., 211; Brailford v. State, 71 Texas Crim. Rep., 113, 158 S. W. Rep., 541; Daniels v. State, 71 Texas Crim. Rep., 662, 160 S. W. Rep., 707; Harwell v. State, 71 Texas Crim. Rep., 473, 160 S. W. Rep.,

378; Dunn v. State, 72 Texas Crim. Rep., 170, 161 S. W. Rep., 467; Bradley v. State, 72 Texas Crim. Rep., 287, 162 S. W. Rep., 515; Cooper v. State, 72 Texas Crim. Rep., 645, 163 S. W. Rep., 424; Stanfield v. State, 73 Texas Crim. Rep., 290, 165 S. W. Rep., 216; Hemphill v. State, 72 Texas Crim. Rep., 638, 165 S. W. Rep., 462; Eads v. State, 74 Texas Crim. Rep., 628, 170 S. W. Rep., 145; Marshall v. State, 76 Texas Crim. Rep., 386, 175 S. W. Rep., 154. Many other cases could be cited rendered since I have had the honor of being a member of the court, but in the opinion of the case of Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328, Judge Davidson, in a case similar to this, so aptly expresses the law, I quote from it:

"Another bill recites that the county attorney, in his argument, made the following statement to the jury: 'He shot an unarmed man; shot him in the back, because he went there to collect a bill. "He ordered me out, and before I got out he shot me."' To these remarks objections were urged by the defendant. The testimony with regard to this in the dying declaration was excluded by the court. Indirectly, if not directly, through the witness Smith, the matter was placed before the jury in regard to his being the bill collector, and seeking to collect from the defendant. This statement or argument, if deemed an argument, by the prosecuting officer was unwarranted and on a crucial point in the case which had been excluded by the court in part at least, and directly so, so far as the dying declaration was concerned, and it was used illegitimately by the county attorney as an argument; and it was upon a most crucial point in the case, and was, therefore, not permissible. If the prosecuting officers will continue to violate the rules of argument and make statements of fact before a jury which are not permissible, or which have been excluded by the court, then they force upon this court the duty of reversing cases. They understand, or ought to understand, that when they transgress the rules far enough in the line of unwarranted argument to use matters before a jury to press a conviction, when such things are unwarranted by law and have been excluded by the court, they assume the responsibility of forcing this court to reverse judgments. The accused in Texas is entitled to a fair trial on legitimate testimony."

In this case, as in that case, the district attorney had tried to get the testimony admitted. The court had excluded it, yet in his closing argument he states, in effect, what the witness would have testified. It was on the crucial point in the case, and without this testimony of the district attorney the jury, in my opinion, would have found appellant guilty of no higher grade of offense than manslaughter, if guilty of any offense, yet with this testimony of the district attorney (not argument) before them, the jury finds the appellant guilty of murder, and assesses a penalty almost equivalent to life imprisonment. Had the court admitted this testimony in evidence over the objection of appellant, with no proper predicate laid, this court would not hesitate to reverse the case. When the district attorney tried to lay the proper predicate, he could not do so, and the court would not permit the wit-

ness to testify, yet in his closing argument the district attorney gets the testimony before the jury by himself telling the jury what the witness would have sworn. If the law can be evaded in this way, it would be better that they make no objection to testimony, for then they would know what they had to meet, and they could discuss it in their argument. When it comes as this testimony did on the crucial issue in the closing address of the district attorney, an accused is helpless and at the mercy of the court. I am of the opinion that the case should be reversed and counsel made aware that additional facts and extraneous matters can not be gotten before the jury by their unsworn statements made in the closing argument.